# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT DE LA TORRE, | CV F   02-6015 SMS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| v. | |
| RAWERS, WARDEN, | [Doc. 1] |
| Respondents. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by George A. Boyle, Esq. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

PROCEDURAL HISTORY

On December 16, 1999, Petitioner pled no contest to one count of committing a lewd or lascivious act upon a child under the age of 14 years (Cal. Pen. Code, § 288, subd. (a)). Petitioner was sentenced to six years in state prison.

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District. On August 10, 2001, the judgment was affirmed. (Respondent's Exhibit 2, attached to Answer.)

On September 20, 2001, Petitioner filed a petition for review with the California Supreme Court. (Respondent's Exhibit 3.) The petition was denied on October 24, 2001. (Respondent's Exhibit 4.)

On January 31, 2002, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. (Respondent's Exhibit 5.) The petition was denied on February 28, 2002. (Respondent's Exhibit 6.) A motion for reconsideration was filed on March 4, 2002, and denied on March 13, 2002. (Respondent's Exhibits 7, 8.)

On March 28, 2002, Petitioner filed a habeas petition in the California Court of Appeal, Fifth Appellate District. (Respondent's Exhibit 9.) The petition was denied on May 24, 2002. (Respondent's Exhibit 10.)

On June 6, 2002, Petitioner filed a petition for review with the California Supreme Court. (Respondent's Exhibit 11.) The petition was denied in July 2002. (Respondent's Exhibit 12.)

On August 20, 2002, Petitioner filed the instant federal petition for writ of habeas corpus. Pursuant to order of the Court, Petitioner filed an amended petition on November 4, 2002.

On January 17, 2003, Respondent filed a motion to dismiss, along with an answer to the petition.[1] Petitioner filed an opposition and traverse on February 27, 2003.

On June 9, 2003, Petitioner filed a request to stay the petition or alternatively, withdraw the unexhausted ineffective assistance of counsel claim. On July 21, 2003, the Court granted Petitioner's request to withdraw the unexhausted claim and denied Respondent's motion to dismiss the petition.

On October 27, 2003, Respondent filed an answer to the petition and Petitioner filed a traverse on November 25, 2003.

On February 10, 2004, Petitioner filed a request to reinstate the unexhausted ineffective assistance of counsel claim indicating that it had been exhausted at the state court level. On March 17, 2004, the Court granted Petitioner's request.

On April 19, 2004, Respondent filed a supplemental answer to address the ineffective assistance of counsel claim, and Petitioner filed a supplemental traverse on April 30, 2004.

---

[1] In its motion to dismiss, Respondent argued that the ineffective assistance of counsel claim was unexhausted.

STATEMENT OF FACTS[2]

    On October 19, 1999, an officer was dispatched to a local residence regarding a report of a child molestation. Upon arrival at the scene, Ronda Immel reported she found a picture of her 13-year-old daughter, Krystle, taking a shower. She confronted Krystle, who told her [Petitioner], Albert DeLaTorre, had been sexually molesting her. Ms. Immel and the [Petitioner] had been living together for several years.
    Contact was made with Krystle, who told the officer [Petitioner] began molesting her approximately four years ago. During that time, he had been touching her and having her disrobe. There were times he would insert his finger inside her vagina or kiss her vaginal area. Krystle was unsure of the dates and times. The incidents would take place in the master bedroom, between one and three times each week, depending on the shift her mother was working. He tried to get her to touch him, but she refused. Sometimes when she refused, he would stop what he was doing to her. On other occasions, he would continue touching her. Krystle also told the officer, when the incidents first began, [Petitioner] told her if she did not agree to do what he wanted, he would take her sister away and hurt her mother. Due to these threats, she allowed the incidents to continue. The last incident occurred approximately one-and-one-half weeks ago. At that time, the [Petitioner] called her into his bedroom, where he took her clothes off and requested that she lie on the bed. He then took his clothes off, knelt on the floor, and began licking and kissing her vagina. Approximately 10 minutes later, she got up and saw him rubbing his penis. She got dressed and left the bedroom. Krystle told the officer this type of activity occurred between 10 and 15 times. There were times he fondled her breasts. He had also tried to put his penis in her anus and vagina, but she would not allow it.
    Subsequently, contact was made with [Petitioner] who admitted he had been sexually active with Krystle. He told the officer his involvement with Krystle consisted of kissing her vagina. The last incident occurred approximately one-and-one-half weeks ago, while her mother was at work. He indicated he could not recall any other inappropriate sexual activity with Krystle. He stated he was very remorseful for his involvement with her.

(Respondent's Exhibit 14, at 5-6.)

DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28

---

[2] Because Petitioner's conviction is based on his no contest plea, this factual summary is taken from the probation officer's report. (Respondent's Exhibit 14, attached to Answer.)

U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

4

(1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Involuntariness of Plea

Petitioner contends that his plea was involuntary because he was lead to believe that he would only receive probation as a sentence, whereas pursuant to his no contest plea he received six years in state prison. In support of his claim, Petitioner submits several declarations from family and friends indicating that defense counsel had assured Petitioner that he would only receive a sentence of probation and possible jail time if he pled guilty.

In response, Respondent cites to the state court record and trial counsel's declaration. The Court notes for the record that although it does not appear that trial counsel's declaration was submitted to the state court for review, Respondent, unlike Petitioner, is not held to the same exhaustion standards under § 28 U.S.C. § 2254(b)(1).[3]

The United States Supreme Court, in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973), held that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

By pleading guilty, a defendant waives the right to a jury trial, to confront one's accusers, to compel the attendance of witnesses, and generally to challenge the evidence that he committed the offense. See Boykin, 395 U.S. 238, 89 S.Ct. 1709. Typically, one who enters a valid guilty plea, cannot on habeas corpus challenge pre-plea constitutional violations. Tollett v. Henderson,

---

[3] In fact, Petitioner does not contest the issue.

411 U.S. 258, 266-67, 93 S.Ct. 1602 (1973); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir.1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"). Such a petitioner may only contend that his guilty plea was not voluntary and intelligent (see e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969)) or challenge the assistance of counsel under the Sixth Amendment. See, e.g., McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267, 93 S.Ct. at 1608; Hudson, 760 F.2d at 1030.

Representations of the defendant at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity." Id. Petitioner's guilty plea is valid unless he can demonstrate that it was induced by threats, misrepresentation, or by other improper promises. Brady v. United States, 397 U.S. 742, 755 (1970).

In rejecting Petitioner's claim in his state habeas corpus petition, the Kern County Superior Court held as follows:[4]

> In connection with Petitioner's claim of ineffective assistance of counsel, Petitioner asserts that his attorney misled him into believing that he was entering a guilty plea in exchange for probation and the possibility of a short stay in the county jail. In support of his assertion, he has presented his own declaration and the declaration of his family and friends. However, Petitioner's claim is contradictory of the information revealed in the Reporter's Transcript for the November 18, 1999 hearing. First, the prosecutor stated on the record that Petitioner "w[ould] be pleading guilty or no contest to a deemed filed amended count two, alleging Penal Code section 288(a), for midterm lid of six years." (See Reporter's Transcript of 859a Proceedings on November 18, 1999, p. 2). Second, the court stated that "[his] experience t[old] [him] there [was] a 99 percent chance [Petitioner would] go to prison" and that "[he didn't] want [Petitioner] to come

---

[4] Because the California Supreme Court's and California Court of Appeal's opinions are summary in nature, this Court "looks through" those decisions and presumes they adopted the reasoning of the Kern County Superior Court, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

> back in a month and say [he was] surprised." (See Reporter's Transcript of 859a Proceedings on November 18, 1999, p. 5). The court then asked Petitioner whether he understood what the court was trying to get across to him. Petitioner responded affirmatively to that question. (See Reporter's Transcript of 859a Proceedings on November 18, 1999, p. 5). Third, the court asked Petitioner, "Has anyone promised you anything, other than what we have put on the record here today, to get you to plead guilty or no contest?" Petitioner responded by stating, "No." (See Reporter's Transcript of 859a Proceedings on November 18, 1999, p. 8). Thus, Petitioner's claim that his attorney misled him into believing that he was entering a guilty plea in exchange for probation and the possibility of a short stay in the county jail fails.

(Respondent's Exhibit 6, at 2.)

The trial transcript in this case belies Petitioner's claim that he was induced into pleading no contest by counsel's assurance that he would only receive probation.[5] At the change of plea hearing, the following exchange occurred:

> THE COURT: [Petitioner], you're now charged in count two with committing a lewd and lascivious act upon a minor. Do you understand that charge?
> [PETITIONER]: Yes.
> THE COURT: That is a serious felony. Do you understand that?
> [PETITIONER]: Yes.
> THE COURT: Do you understand the proposed disposition of receiving no more than the midterm, which is six years in prison?
> [PETITIONER]: Yes.
> THE COURT: I'm going to go through your rights with you, I need you to answer out loud just like you're doing. If I tell you something you do not understand, I want you to tell me and I will explain it to you.

(CT 7.)

With regard to penalties that may be imposed, the court advised Petitioner as follows:

> THE COURT: The maximum penalty for this charge is eight years in prison. It has been agreed that you would receive no more than the midterm, which is six years. Do you understand that?
> [PETITIONER]: Yes.
> [THE COURT]: You are going to go to prison, you realize that?
> [PETITIONER]: Yes.

---

[5] The Court notes that under California law, a no contest or nolo contendere plea has the same effect as a guilty plea in the criminal justice system:

> [A] plea of nolo contendere shall be considered the same as a plea of guilty and [] upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes.

Cal. Pen. Code § 1016. Cf. North Carolina v. Afford, 400 U.S. 25, 37 (1970) (fact that plea is one of nolo contendere rather than of guilty does not preclude the imposition of a sentence as if on guilty plea).

7

>   [DEFENSE COUNSEL]: Excuse me, your Honor, it's a lid.
>   THE COURT: I realize it's a lid, [Petitioner], and I realize that technically you're eligible for probation. I'm sure Mr. Humphrey will argue for that and make a case. But my experience tells me there's a 99 percent chance you'll go to prison. I don't want you to come back in a month and say you were surprised. That's what I'm trying to get across to you. Do you understand?
>   [PETITIONER]: Yes.
>   THE COURT: I'm not the judge that's actually going to sentence you, it will be a judge in Superior Court. If for some reason that judge does not accept this plea bargain, you will be allowed to withdraw your plea and start all over. Do you understand that?
>   [PETITIONER]: Yes.

(CT 9-10.)

Further, the court questioned:

>   [THE COURT]: Has anyone promised you anything, other than what we have put on the record here today, to get you to plead guilty or no contest?
>   [PETITIONER]: No.
>   [THE COURT]: Has anyone threatened you or anyone close to you to [sic] in an effort to force you to plead guilty or no contest?
>   [PETITIONER]: No.
>   [THE COURT]: Are you pleading freely and voluntarily?
>   [PETITIONER]: Yes.

(CT 12.)

The trial court clearly and unequivocally informed Petitioner that a sentence of probation was neither reasonable nor realistic. In his petition and traverse, Petitioner relies primarily upon Blackledge v. Allison, 431 U.S. 63 (1977), in support of his claim. Petitioner contends that Blackledge is factually and legally indistinguishable from his claim. The Court does not agree. Here, unlike in Blackledge, a transcript of the change of plea hearing exists, and the Court cannot and will not overlook the verbatim trial transcripts of the change of plea and sentencing hearings in this action.[6] Further, as Respondent submits, another distinguishing factor between Blackledge and the instant case is the context in which the cases arose. In Blackledge, the United States Supreme Court acknowledged that the defendant had been arraigned only 37 days after the high court had issued a decision formally recognizing the legitimacy of the plea bargaining process. Blackledge, 431 U.S. at 76-77; see Santobello v. New York, 404 U.S. 257 (1971). The North Carolina procedure under which Blackledge pled was found to have reflected an

---

[6] It was acknowledged in Blackledge that had the plea bargain been recorded to accurately reflect the transpired negotiations, the basis for a later challenge would be effectively minimized. Blackledge, 431 U.S. at 80, n. 19.

atmosphere of secrecy.  In fact, the court noted that nothing about the process did anything to dispel a defendant's belief that any bargain struck must remain concealed - - including Allison's attorney's own admission of his admonition to his client that disclosure could jeopardize the agreement.  Blackledge, 431 U.S. at 77.

By contrast, Petitioner's 1999 plea came long after the process of plea bargaining in California was accepted as valid in the courts and codified in state law.  See, e.g. Pen. Code, §§ 1192.3, 1192.4, 1192.5, 1192.6; People v. West, 3 Cal.3d 595, 607-608 (1970).

Even if Petitioner's counsel informed him that the judge would only sentence him to probation, and Petitioner harbored such a belief, it was dispelled by the judge's remarks at the hearing on his no contest plea.  The judge specifically instructed Petitioner that although Petitioner was technically eligible for probation, there was a 99 percent chance he *would not* receive it and *would go* to prison.  Further, at the time of accepting Petitioner's no contest plea, the judge advised Petitioner that he could withdraw his plea and start over if the sentencing judge did not accept the plea bargain, and Petitioner agreed that he understood that right.  (CT 10.)  At the time of sentencing, the following argument by defense counsel was presented:

> [DEFENSE COUNSEL]: I would only like to highlight Dr. Musacco's report, and I believe that this would be an appropriate case to at least explore the *propriety of probation* based on the report of Dr. Musacco, and I would request a referral pursuant to 288.1, given what Dr. Musacco's findings are. . . .
> [DEFENSE COUNSEL]: Your Honor, in this particular case the *negotiated disposition was a lid*, and what we're asking is for the Court to evaluate my client both in the circumstances of the offense as well as the surrounding circumstances, including his own history, which has been set forth in Dr. Musacco's report.  It's almost predictable that we're here, and unfortunately, other than a sexually violent predator, there is no treatment in the Department of Corrections for these type of offenders.  I think that should be a consideration.
> The basis on which probation says this is not a probation case is the seriousness of the offense.  All of these offenses are serious and yet in certain circumstances particular offenders are at least referred either to 288.1 or on a diagnostic first to make that determination and then back to 288.1 so that the court can make an informed decision both as to the offense and the offender and the mental status of the offender so that an appropriate resolution can be reached. And I believe in this case that what I'm urging the Court is not out of line with what Dr. Musacco's findings are but more out of line with what the people that know [Petitioner] the best have indicated to the Court.
> We do have some very strong mitigating factors that were pointed out not in consideration of sentencing but, in spite of the nature of the offense, out of concern for the victim.

(RT February 28, 2000, at 2-3, 5-6, emphasis added.)

9

Nowhere in counsel's argument did he present to the court that there was any agreement to a probationary sentence; counsel merely argued, as the Judge informed Petitioner at the plea hearing, for the Court to consider and grant probation. What is clear in counsel's argument is that the negotiated plea was for a six year lid. Any belief on the part of Petitioner that he would be receiving a sentence of probation was clearly dispelled by the transcript of the proceedings at both his change of plea and sentencing hearings. It is noteworthy that Petitioner never objected to the court's or counsel's presentation of the plea agreement at either the plea or sentencing hearings. Even after the judge imposed the six year prison term, Petitioner likewise did not voice any objection and did not request to withdraw his plea.[7] Petitioner stated that no representations were made regarding how long his sentence would be, and that no conditions, other than those explained by the trial court, were placed on his plea. More importantly, Petitioner indicated that no promises, threats, or inducements were made in connection with his plea. Petitioner's declarations in open court carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. at 73-74. Petitioner repeatedly stated that he understood the terms of plea, and the terms included a six-year lid only.

The fact that Petitioner's family wished to appeal the sentence immediately after its imposition does not further Petitioner's claim that the plea was involuntary as there could be a myriad of reasons for wanting to appeal.

Further, as acknowledged in Blackledge, in the context of a challenge to the voluntariness of a guilty plea, a contention that the sentence was other than what the Petitioner had bargained for "will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances." Blackledge, 431 U.S. at 80, n. 19. The Court finds that the required "extraordinary circumstances" that warrant an evidentiary hearing are not present in this case. Counsel declares under penalty of perjury that no such promise existed,[8] Petitioner was given

---

[7] As previously stated, at the time of Petitioner's no contest plea, the trial judge specifically informed Petitioner that if the sentencing judge did not accept the plea bargain, he could withdraw his plea and start over, a right of which Petitioner acknowledged he understood. (CT 10.)

[8] In fact, counsel declares under penalty of perjury that he never told or promised Petitioner that there was any deal with the prosecutor or judge. (Exhibit 13, attached to Answer, at 1.) Counsel declares that the only deal was for a six year lid, and that he would make an application for probation, but it was unlikely he would receive

10

ample opportunity to acknowledge his understanding and contest the trial court's interpretation of the promise, and Petitioner was specifically informed by the judge of the maximum sentence and that probation was highly, albeit 99 percent, unlikely.  In light of the strong, lengthy and reliable state court record, Petitioner's plea cannot be said to be involuntary or unknowing, and his claim fails on the merits.  The state courts' determination of this issue was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Petitioner's claim must be denied.

D.    Ineffective Assistance of Counsel

Petitioner contends that defense counsel was ineffective because he misrepresented that if Petitioner pled "no contest" he would only receive probation pursuant to the plea agreement.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688.  The court must

---

probation. Id.

also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

Because Petitioner has not shown that his plea was involuntary, Petitioner cannot show that counsel was deficient.  However, even assuming that counsel was deficient in advising Petitioner to accept the plea bargain, Petitioner has not shown a reasonable probability that the result of the proceedings would have been different, and therefore he has not demonstrated any prejudice.  Petitioner argues in conclusory terms that had counsel subjected the charges to adversarial testing, it is probable that Petitioner would have prevailed at the preliminary hearing, during motion proceedings, or at trial.  Petitioner offers no further argument in support of his claim and nothing in the record supports Petitioner's contention.  Rather, the record demonstrates that had Petitioner gone to trial, the result of the outcome would likely have been worse had he been convicted.  As Respondent argues, the prosecution's case was strong.  The molestation charge was initiated when the victim's mother found a nude picture of her child taking a shower. When confronted, the child admitted that Petitioner had been molesting her on numerous occasions. (Respondent's Exhibit 14, Probation Report, at 4-5.)  It was defense counsel's assessment that the victim's statements were credible, and he believed that going to trial was

likely a losing proposition for Petitioner that would result in a harsh sentence.[9]

Had Petitioner not pled guilty and gone to trial, he potentially faced more severe charges and penalties. Petitioner's original charge of violating California Penal Code section 288.5 carried a maximum penalty of 16 years in state prison, 2 2/3 times the penalty Petitioner received pursuant to the plea agreement; and, absent the plea agreement, Petitioner faced a potential 8 year maximum on the current offense, representing a great disparity between the sentence exposure at trial and in the plea bargain. The plea bargain did not foreclose the possibility that Petitioner could argue for and be granted probation. Further, as previously stated, the prosecution's case was strong; and, it was counsel's opinion that the case was initially undercharged, making it possible that more severe charges could have been subsequently filed had Petitioner not pled guilty. Given the circumstances presented pursuant to the plea agreement and the potential result of going to trial, Petitioner has not presented a reasonable probability that the outcome of the criminal proceeding against him would have differed had he received competent legal advice.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

**Dated:   March 9, 2006**                /s/ Sandra M. Snyder
icido3                                        UNITED STATES MAGISTRATE JUDGE

---

[9] Continuous sexual abuse of a child (Ca. Pen. Code, § 288.5), Petitioner's original charge (CT 2-3), carried a maximum penalty of 16 years in state prison, or 2 2/3 times the sentence Petitioner received under the plea.